All rise. Court is now in session. Please be seated. Will the clerk call the next case, please? 3-16-0188 In re Marriage of Amy Tworek, Appellee by Mark Farrell and David Tworek, Appellant by Timothy Reeve. Mr. Reeve, good afternoon. Good afternoon, Judge. May it please the Court, Timothy Reeve on behalf of the appellant, David Tworek. This appeal stems from an order of the trial court. What we're appealing today is really three separate parts of the applicable order. One aspect of it denies David Tworek's motion to modify visitation notice. Another aspect of it grants Amy Tworek's petition for contribution to attorney's fees. The third aspect of it concerns the trial court's denial of David's motion to deviate downward in child support. Just for purposes of simplicity, I'll just move forward in the order that I addressed them in my brief. In terms of David's motion to modify visitation notice, what I bring forth in the brief, the trial court applied the wrong legal standard in reaching the determination. To simplify, the parties were divorced the prior year before David filed his motion to modify. Part of the judgment for dissolution of marriage, the parenting plan associated with that, it talks about requiring David to give five days' advance notice to Amy in order to say, I can't make the visitation. If he does it within in excess of five days, then he can reschedule that visitation. If he doesn't, then he loses the visitation. What was the schedule for visitation? At the time I had, Judge, I don't recall. But as an example... I understand the notice requirement. I just didn't know how much visitation he gets on a weekly, monthly... Right. And again, my apologies. I was not trial counsel. But in terms of the notice procedures, essentially so if David's weekend was coming up, he'd need to notify her within five days. What he brought forth was an argument that essentially said, the nature of my job requires certain after-hour activities that just aren't known until, on my time, that's shorter than five days. So he brought the motion forward pursuant to Section 607 of the Illinois Marriage and Dissolution of Marriage Act. That section specifically states that the court may modify an order granting or denying visitation rights of a parent whenever modification would serve the best interest of the child. Emphasis on serve the best interest of the child. What happened at the hearing, and it's clear in the order that we're appealing, and it's clear in the language that Judge Kennison used in delivering her findings, is that what Judge Kennison said is, I don't find substantial change in circumstances here. Okay? So she essentially, which that is a standard that is applied in changes of custody, as was applicable then. It's not applicable to changes in such as this, which are parenting time. As I lay out in the brief, that's not only supported by the plain language of the statute, but numerous of fellows court cases. So what I'm saying here is the wrong statute was applied. All that I'm asking is that David be given his opportunity to have the actual correct standard applied. He put forth an argument at the trial court level and testimony was heard that said, the kids are going to be able to see their dad a lot more often if the notice requirements are modified. So there's a best interest of the children argument that was advanced in court that was just not contemplated by the judge because she just said there's no changing circumstances there. She wrote that in the written order, but didn't in the transcripts when she delivered her word, didn't she go through the list of different items and discuss why this was good or not good for the children and also discuss some previous, because this wasn't the first notice provision, was it? The five days was already. The matter was before it went to trial the previous year, and that is one of the things that I think the opposing counsel brought forth in the brief is that the previous brought forth some arguments as to why the five was set at the trial level. But as I lay out in the brief, the court's decision to me from a review of the record, from a review of the order, is that she found there was no change in circumstances. And he's entitled to the applicable statute. Were you trial counsel? I was not. Do you know if trial counsel raised the standard? Yes, Judge. And as I lay out, so a motion to reconsider was filed after the original denial. In the motion to reconsider, they lay out that the incorrect law was applied. Also, on the record, as I lay out in my brief, trial counsel stated, trial court reinforced on the record, page 139, I believe, that there was no reference whatsoever to the best interest as set forth in section 602A. So it was before the court, and it just wasn't addressed. So that's the name change, or the notification issue. The other issue, and so just to clarify my position, I believe this is the novel review on your part because the statute was misapplied. The evidence before you is sufficient to show that it is in the best interest of the children, in that it gives them an opportunity to see their dad more often, whereas the current position does not. So either reverse and show that there is enough evidence to show that there was a best interest, or send it back to the trial court and let him or her decide. In terms of the second issue, fees, attorney's fees were ordered pursuant to sections 508A and 503J of the Illinois Marriage and Dissolution of Marriage Act. What we're attacking here is the evidence that was before the court to make the decision as to the financial resources of the petitioner, Amy Torek. The issue before the court here is that, and I referenced throughout this court's decision in Illinois Marriage of Anderson, which is the citation to that is 2015 INL App 3D 140257. In that case, my belief is that this court has been clear that certain procedures need to be followed in terms of the information before the court and the timeliness of that information. What happened in this case was the financial affidavit that was presented to the trial court was from May of 2016. The hearing did not proceed until August of 2016, so there's a couple month gap in between. There's no testimony whatsoever in my finding that verifies that any of the documentation that was brought forth in the financial affidavit was actually accurate at the time of the hearing. What this court addressed specifically, this comes from Will County, this court specifically addressed in Anderson Will County Local Rule 8.05. That rule provides that the moving party in these types of proceedings shall prepare a financial disclosure statement under oath and serve the opposing party three days before the hearing. In Anderson, this court went on to say, you know, these local rules are not discretionary. This is a mandatory rule. The local rules... It was actually contested at the trial level. It was dealing with several years difference in time. Here's the 60 days. Has something alleged that you think really changed? Did somebody win the lottery? I mean, what are you getting at? What I'm getting at is I don't know. The testimony that we have at the trial court level, the only authentication as to the timeliness of it, is that opposing counsel, counsel for Ms. Torek, asked her, was this accurate at the time of the judgment was entered? So was this accurate when the trial for the divorce proceeding was originally had? So not asking if it was accurate as of today's date, but asking if it was actually accurate even going further back to the previous year when the divorce proceedings were finalized. So there's no other documentation. And this is, of course, and I'm following Anderson and the applicable rules. Certainly, I fully acknowledge that there is a factual distinction between Anderson in this case in that the Anderson case, the financial disclosure was older. That's clearly the case. But nonetheless, this is still a case where the trial court awarded a substantial amount of money in attorney's fees to be paid by David Torek. And she did so based on a financial affidavit that was stale. And there's no other evidence that was brought forth that would contradict that, that would say, well, yeah, but she brought this, this, and this, and that was clearly accurate. The bank statements were outdated. Anything of any relevance was outdated. So what I'm putting before the court is that Will County Local Rule 8.05 states that the financial disclosure statement needs to be tendered within three days of the hearing. That clearly was not done in this matter. In fact, it wasn't even close to being done in this matter. To answer your question, Judge, more fully, what were her financial circumstances at the time of hearing and how would that affect it? I don't know because that wasn't testified to. And the evidence was not brought forth. And she was the petitioning party here. I think that's the other thing to keep in mind. This was not David Tworek's motion. This was Amy Tworek's motion. In the response brief, opposing counsel puts forth the argument, well, the objection wasn't made to the financial disclosure statement. Well, no one acknowledged that this was accurate. It's not David or David's trial counsel's job to make sure that Amy puts forth sufficient evidence. Did David file an affidavit within three days of the hearing? Off the top of my head, I didn't have a call, Judge. So the local rule required that as well? Obviously, both parties are subject to the local rule. So is it possible to just waive that? Well, no, Judge. The local rule, though, what it says is that the moving party shall prepare a financial disclosure under oath and serve the opposing party three days before the hearing. So there is a distinction in what the rule specifically states. It does specifically direct the moving party and put the burden on the moving party in that instance. And that was all done in this case, but your client's counsel was asked to have the case continued because they were hearing in another matter.  The proceeding did not move forward to hearing until August. And the financial disclosure statement was dated in May. And at that time, he didn't object to the demand to have it, which is what happened in Anderson where the judge refused to require it. Your client didn't do that, didn't object. I'm not – I don't not believe that he did, Judge. Two minutes, please. All right. Then the third issue that's before the court is the trial court's decision to deny David's motion to deviate downward in child support. Essentially, as I lay out in my brief, what happened as a result of the trial court's decision to set child support at what was the 28% of David's net income is essentially, and this is laid out I believe in page 20 and 21 of my brief, the end result here is that David is paying for in excess of 82% of all expenses that Ms. Torek disclosed in the financial disclosure statement that she tendered. That it's not just the expenses for the kids. She's paying for 82% of her expenses. Now, maintenance was waived. Both parties make a solid living. Mr. Torek does make more money pursuant to the trial court's findings.  There's a lot of testimony about how they lived a simple lifestyle. There's talk about the stores they shopped at, so on and so forth, how the kids' lifestyles were such that they really held a lot of priority into keeping things simple. So David accordingly filed a motion to deviate downward. Again, the end result of the order is that Mrs. Torek is walking early with several thousand dollars a month in just income that there's no explanation for where it's going to go. Apparently she can save $3,000 a month when she's only listing $1,000 a month in expenses for the kids. So as I outlined in the brief. That's consistent with the lifestyle they had before. But it's consistent to the respect of Mrs. Torek. The evidence shows that it is a drain on Mr. Torek when you consider all the expenses. The family before the divorce saved a lot of money rather than spending it on children at an average rate. It was a very frugal budget for the children's expenses. Now the fact that Mrs. Torek may be living by the same standards, spending little and saving more, it's the same lifestyle. Well, I understand that perspective if we were talking about maintenance. Because that is essentially for Mrs. Torek to be able to have her lifestyle continue the same. But she waived maintenance. What this is talking about is this is just a child support order. And that's kind of what I'm saying is the effect of this. It's not a child support order. It's a maintenance order. Because the effect of this is that she is able to do all those things that one would expect from someone who was getting maintenance. Is he paying a statutory percentage? He is, Judge. So the motion was to deviate. $230,000 a year and she's making $75,000. That's correct, Judge. And she did waive maintenance. So you want us to develop a rule of law that says everything you pay to child support has to be immediately spent on the child? No, Judge. That's not at all what I'm saying. No, not in any way am I saying that. And I don't think that that would be a good rule of law. No, it doesn't. What I do think is that there is a sliding scale and that at some point you get to the point where it's not a good practice. And I think that, frankly, that's some of the reasoning behind the changes that are coming in July that are more reflective of that, of the discrepancy that can occur. I think this is one of those examples. So just to briefly wrap up, the three issues with the issue of the notice, again, the trial court judge applied the incorrect law. She said there was no change in circumstances when really she was analyzing the best interest of the children. With the deviation or, I'm sorry, with the notice, with the fees, the attorney's fees, again, the judge was looking at evidence that was stale. It did not comply with the local rule, the applicable statute and applicable case law. And in terms of the deviation downward, the argument in child support, the argument is that this is really a windfall and it's historic. So I'll reserve my time for questions. Thank you. Mr. Farah, good afternoon. Good afternoon. Thank you. Dr. Farah, on behalf of Eppley Petitioner Amy Torek, I'm going to please the court. I'm just marking my time here. With respect to the first issue, the trial court applied the proper legal standard in denying Mr. Torek's motion to modify visitation. The court did apply the best interest standard to the children, not only by relating to the deleterious effect that this last-minute cancellation and change of parenting time had on the children, but in fact, Judge Kenison was so disturbed by Mr. Torek's testimony that she modified the prior rule and defined emergency very narrowly so Mr. Torek couldn't continue to upset the children. And when she did this, she specifically cited that it was in the best interest of the children that emergency had to be defined more clearly. But with respect to the argument about a substantial change in circumstances, if you look at the motion itself, and I was the trial attorney in this case, two visits, two visits after this parenting agreement was entered, Mr. Torek filed a motion alleging that circumstances had changed substantially because he had last-minute work commitments on Friday when he was supposed to pick up the kids for alternating weekend visitation. That was the factual basis for the motion. And so Judge Kenison determined that the alleged last-minute changes to his work schedule, requiring a modification of the notice provisions in accordance with the best interest of the children, was not supported by the evidence. He didn't meet his factual burden. And the record reflects that Mr. Torek's testimony was that at any time he goes out with coworkers and vendors on a Friday night for a happy hour, it is a work-related emergency. He was going out drinking on a Friday night. So Judge Kenison's statement about him not showing substantial change in circumstances, this was the underlying factual basis for his motion. So she found that that factual basis was not met. Just the record shows testimony that counsel claims either Judge Kenison didn't consider or felt was not relevant to the best interest of the children. I think this is pertinent because this is a de novo review. If you determine she applied the wrong standard, you could apply the correct standard based on the record. Ms. Torek testified that because of her son's special needs, there was a need to set boundaries and a specific predictable schedule for the children. She testified that having plans for the children, particularly her special needs son on the weekends, was critical. And she can't make plans if Mr. Torek changes his parenting schedule at the last minute. Mr. Torek's communication with his former wife regarding the changes in his schedule, as noted by Judge Kenison, did not even identify an emergency. Rather, Mr. Torek dictated when and where and how he would pick up the children and took the opportunity to call my client a gold digger, a thief, ridiculous, bitter, controlling, mostly on family wizarding texts. Presumably Mr. Torek believes the court didn't consider this testimony because Judge Kenison didn't specifically recite the statutory factors in her ruling. She's not a first-year law student, and there's no case that has been cited by counsel or exists that states that the court has to tick off the statutory factors in determining the best interest of the children. In fact, as I stated a moment ago, the court modified the notice provision to more specifically define the term emergency to avoid Mr. Torek's abuses in the future, stating, I think it's just and necessary. It's in the best interest of the children that we further define what, quote, emergency is. The trial court again made reference to the best interest of the children in denying the motion to reconsider. She said that David has shown a repeated failure to act rationally, reasonably, and in good faith with Ms. Torek. He's been manipulative and controlling, and he wants to dictate. And it's his tone, it's everything that he does that continues to drive this wedge between him and the custodian of the children, and unfortunately that is the wedge between him and the children. So how you could read this testimony and read Judge Kenison's findings and determine that she disregarded the standard is somewhat puzzling to me. It's evident that the standard was considered, it was supported by the testimony, and it was even cited by the court in modifying the notice provision. Alternatively, even if the court determines the trial court erred, the error was invited by Mr. Torek's counsel. Mr. Torek's motion to reconsider specifically stated, quote, the court incorrectly applied the law in this matter by not finding there was a substantial change in circumstances and by not finding it was in the best interest of the children to change the notice provision. The two were linked and specifically referenced. Counsel invited Judge, and I think Judge Kenison, had to comment upon Mr. Torek's failure to meet his factual burden. That doesn't mean she didn't apply the right standard. With respect to the fee petition, the court clearly did consider Ms. Torek's financial circumstances at the time of the hearing. The court should note that the only alleged error here is the failure on appeal, is Judge Kenison's failure to consider Ms. Torek's financial circumstances at the time of the hearing. There's no challenges to the reasonableness of the necessity for these fees. Briefly, the underlying facts. The hearing was continued multiple times, as the court noted. The financial disclosure statement was served on June 2, 2015, four days before the scheduled June 5 hearing in compliance with local rule. The hearing was ultimately conducted on August 3 and August 4, two months after the service of the affidavit, not four months as alleged in counsel's brief. And the financial disclosure was admitted into evidence without objection. Now, I find it disturbing that counsel says, I don't know what Ms. Torek's current financial condition was at the time of the hearing. I'm looking at pages 185 to 187 of the record, which are cited in the brief. There were three pages of questioning wherein Ms. Torek updated and made current her financial disclosure statement. She updated it with respect to her income. She stated how much she had paid to her former husband in connection with refinancing the house after the judgment. She testified as if the current mortgage indebtedness, her current bank accounts had not changed substantially from the time two months prior to the date of her testimony. With respect to the retirement plan, she talked about her balance of her retirement plan, her current balance of her 401k plan, her credit card balance, and she was cross-examined by Mr. Torek's counsel regarding credit card balances and if they're current or not. So this was completely updated by way of testimony, and it's all in the record. It's clear that the court did consider the party's financial circumstances at the time of the hearing, but even if it didn't, there was no objection at trial or in the post-trial motion to the financial declaration that was submitted. So the issue was waived on appeal. Also, counsel did not even address in their brief Judge Penison's alternative reason for the award of fees, which was Mr. Torek's prolonged litigation was unnecessarily prolonged by Mr. Torek. Judge Penison stated that the court specifically finds there's an additional factor that the court deems just and equitable to consider if any contribution to Ms. Torek's fees are to be awarded, and that factor is the unnecessary increase in the cost of litigation caused by Mr. Torek, and Judge Penison went on for several paragraphs in the record to discuss delays, unreasonable positions, his behavior in court, even his slamming down his glasses on the table as she was ruling. Counsel cites the Anderson and Lamar cases, and as the court noted, in Anderson the affidavit was 18 months old and there was no testimonial update, and in Lamar no evidence at all was presented with regard to the financial circumstances of the parties. So, in summary, those circumstances were considered, the issue was waived, and there was an entirely independent basis for the award of fees, which Mr. Torek didn't even touch upon. With respect to the final issue, the deviation in trial support, the argument of opposing counsel is that pursuant to the reasoning of the Bush case, she is receiving a windfall and the trial court should have deviated from guideline. Counsel also argues that the record shows that the parties made a specific choice to live beneath their means during the marriage, so presumably, as the court pointed out, this lifestyle of forced austerity should be imposed on Ms. Torek after the divorce. Also, Mr. Torek tries to use, bizarrely, the standard maintenance waiver language that Ms. Torek, in waiving maintenance, said she is self-sufficient to somehow show that she's not entitled to additional support. Well, first let's discuss Bush and give it some context. The Alderman Bush was earning $300,000 per year in 1987, 30 years ago, in the 4th Appellate District. It's noteworthy that even the Bush case, in 1987 dollars, doesn't support a deviation from gross of a projected income of $207,000 a year, which is Mr. Torek's projected income. And I also want to point out, what Mr. Torek was trying to do in that hearing, he was paying, I believe, $1,087,000, I can't recall the precise number, somewhere between $1,050,000 and $1,100,000 a month in child support on his base income. He was asking Judge Kenison to vacate the TRUA. So everything, all this income from $57,500 a year to $207,000 to $233,000, based on the projections, that was all supposed to be his. So, back to Bush, which is a case I look upon fondly, because I know this is a little self-indulgent, but this was decided by Justice Carl Lawton of the 4th Appellate District, two months into my clerkship. I did not participate in the Bush decision. I did not participate in the research. But I do know something about the cost of living in central Illinois in 1987. What would $300,000 in 1987 in the 4th District be equivalent to in Naperville 30 years later? $500,000, $600,000, $700,000? Well, I think the Hill case answers the question. Hill is the more modern and the more relevant case. Hill is three years old, not 30. In Hill's, in this case, the custodial parent, like Ms. Tork, lived in the former marital residence in Naperville, much higher cost of living. In Hill, the house, like the house in this case, had fallen into disrepair, and there was no deviation from guideline at a gross income of $826,000 per year. Of course, Mr. Tork argues that the lifestyle of forced austerity during this marriage should continue to be maintained, and the testimony regarding the imposition of these controls on his wife is disturbing, and it's evident from Judge Kennison's findings that it's disturbing. Ms. Tork had to account to the penny on charges and account balances. The family was forced to live penny by penny to maintain Mr. Tork's savings goals. Mr. Tork was, by his own admission, quote, stringent with the finances and his savings goals. The family had to shop at Goodwill, and there were many other forced austerity measures testified to. Now, post-divorce, it wasn't even the lifestyle of the marriage. It's even worse, according to Ms. Tork's testimony, because she's in litigation, and we're in on petitions for rule of the show cause trying to get our true up money. Ms. Tork testifies that the party saved money during the marriage. She can't save money now. Mr. Tork misses a very significant amount of visitation. At the time of testimony, it was about 50 percent. So the cost of raising the children is disproportionately visited on my client. The party's son had significant medical expenses because of his special needs, anxiety, and depression, which Mr. Tork testified about. The fence was falling down. My client couldn't remove dead trees. She couldn't re-carpet. She couldn't re-paint or even address a rooming problem that she testified about. This wasn't the lifestyle of the marriage. This is Dickensian. Moreover, even if it was, even if that was the lifestyle during the marriage and there were rats or whatever it is under the deck, Mr. Tork, who was described by Judge Kennison as controlling and dictating repeatedly, should not be allowed to impose relative poverty on his children while, in the 13 months since the divorce, Mr. Tork testified at the time of the hearing that he bought a $41,000 vehicle for cash, accumulated $35,000 in savings, $28,000 in retirement, paid $53,000 to his attorney, and consistently referred to his former wife as a gold digger. The trial court found that Mr. Tork's monthly expenses were $3,969 and Ms. Tork's were $4,252, but that Mr. Tork's were intentionally reduced to support his claim that he lives frugally, to lend credibility to this, what I believe is a crazy argument. As for the maintenance waiver, that's of no relevance at all. If we follow Mr. Tork's reasoning, any statement by a former wife regarding self-sufficiency in a maintenance waiver could trigger a deviation from guideline, and that's just not the law and it never was. The party seeking deviation must produce evidence that compelling reasons exist to justify deviation from guideline. Mr. Tork didn't even come close to meeting this burden. It can't be said that the court's decision on this issue is against the manifest way of the evidence. Thank you. Questions? Thank you very much. Thank you. Mr. Reed, rebuttal. This is very brutal. With regard to the motion regarding notice. Regarding what? The notice of visitation. Mr. Farrell put forth his argument. The facts are laid out in the brief. The facts are laid out in the record. I don't believe that the record consists. A reading of the record shows what Mr. Farrell is saying. What the record shows is that Judge Keneson focused on a lack of change of circumstances. That's not the law. Nowhere in here do I say that she needs to itemize all the best interests, but what is clear from a reading of the record is that what was done was she looked at the change in circumstances. There's no indication that she based this decision on that. She went to a step that does not exist, and that's error. If we can affirm a trial court on any basis that can support the record, is there any reason why we couldn't affirm this even though not only according to you, she used the wrong standard? Yes, Judge, because I think as I tried to elaborate on, or at least touch on in the brief, there is ample testimony suggesting that if the notice provisions were changed, that Mr. Torek would be able to see the kids more often, and that he would be able to foster a more positive relationship with the kids, and that the notice provisions, the nature of his job was such that it frustrated that. So a change in the notice provisions, as is outlined in the testimony that he gave, would better serve his ability to see the kids. But that may not be the only factor involved in the best interest of the children. I entirely understand that, Judge. And I think from a review of the record, you know, the reality is that while certainly it's a factor, the ability of a parent to facilitate a relationship with children is certainly of large importance. And I don't know, I think if you're just going to weigh on a denoble basis, I think that you can see from a reading of the record that it would be better for the kids to be able to spend more time with their dad. The time under the current provisions is not being able to be effectuated. Following up Justice McDade's question, I think what she's also asking is, based on what Mr. Farrell has said, that we can read the record and make our own determination. However, in your brief you've asked that we be named for the trial court to look at this with the new standard. What is your position on whether we can apply the current standard to the record as it exists? As I think I said, I think that there is sufficient evidence to show that it was in the best interest of the children to grant Mr. Torek's motion. So do you think this court can do that, or do you want us to remain for the trial court to apply the current standard? Well, clearly as I asked for in the brief, it's for a remand so that the issue can be fleshed out. But I'm not going to likewise ignore the law. And I'm also confident that a reading of the record will show that the driving factor behind all this is that a granting of Mr. Torek's motion on that issue would allow a facilitation of more time to be spent with the kids. And that as a result, that would be a positive impact on their lives. Well, Judge Kenison seems to suggest that he is controlling and manipulative, and that he imposes unreasonable standards on the children, and maybe that counterbalances. Those were certainly Mr. Ferro's words. I think that if you read the record of her description of the notice, there's no question, I'm not trying to sugarcoat, that she does outline in previous hearings issues that she had with Mr. Torek. But I think that if you take a look at her specific reasoning on these issues, that you'll find that she did, for example, with the notice. She skipped over this analysis of what the children's lives would look like with this being changed, or what they are now, and how that would impact them. She just looked at what were Mr. Torek's circumstances back at the divorce, and what were they today. And she said there wasn't a change, but that's not what needs to be looked at. And again, with regard to the fees issue, counsel discussed all sorts of sub-issues. The main issue is that the financial affidavit was stale. There was not additional evidence in the record that shows that the information was current. It goes backwards. And likewise, again, with the deviation downward, I appreciate Mr. Ferro's statement concerning every maintenance waiver can't lead to a deviation downward. And like I said, I think that it is a sliding scale. I think at a certain point, if you look at what is being paid in child support, at a certain point it gets to an amount that is inconsistent with what the intention of child support is. I think that's reflected in the change in the statute here. Any other questions? I have a quick question on that, as I'm interested in your view. This was an agreed parenting agreement, if I'm not mistaken. The parties agreed to the five-day notice, even though the guardian made live and recommended seven. So once there's a bi-weekly weekend visitation established by agreement, isn't that really the children's visitation schedule that should be etched in stone? And you seem to be arguing that it was your client's visitation schedule that he should be allowed to change. Right. I'm just interested in the difference of your perspective and the way I see the schedule. No, that's not, and obviously I'm advocating on behalf of my client, so I have a tendency to use my client's name in his sign. That's not what I'm trying to say. What I'm actually trying to say is, from the children's perspective, that the notice provision in there, because of the nature of my client's job, it was frustrating his ability to say, I can't do this time, but I can do this time. So that's where he was going in there. So in the real world experience, after the agreed order was entered, it was showing that this isn't something that's working. Well, for him, but the reverse is also true. It's also not something that was working for the children to be able to have facilitated a parenting time with their father. It goes both ways. It's presumably positive for both sides of the equation. But this notice provision was put in because there were existing problems that were being addressed by the provision. Right. The nature of his job was such, and I think that what was found is that once that was agreed on, that was found that something different needed to be done. And I understand your argument that this is your client's decision and not necessarily yours. No, that's not what I'm trying to say. I'm saying the language that I use is reflective of the fact that I'm educating a certain person. I was hoping that you were being a little more reasonable than your client. Thank you, Judge. Are there any other questions? Thank you. We thank both of you for your arguments today. We will take them out under advisement and will issue a written decision as quickly as possible. The court will stand in brief recess for a panel of change.